UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NIGEL WRIGHT,

        Petitioner,        Case Number: 2:12-CV-14164
                                         HON. ARTHUR J. TARNOW
v.

STEVEN RIVARD,

        Respondent.
_____/

## OPINION AND ORDER ON REMAND

This habeas case is before the Court on remand from the Court of Appeals for the Sixth Circuit. On May 28, 2015, the Court issued an Opinion and Order Conditionally Granting Petition for Writ of Habeas Corpus based upon violations of the Confrontation Clause and the right to effective assistance of counsel. *Wright v. Rivard*, 2015 WL 3441154 (E.D. Mich. May 28, 2015). Respondent appealed the Court's Opinion and Order. The Sixth Circuit Court of Appeals vacated this Court's decision and remanded the case for further proceedings consistent with its Amended Opinion.[1] *Wright v. Burt*, 665 F. App'x 403 (6th Cir. 2016), *cert. den.* 137 S. Ct. 2166 (May 22, 2017).

The Court now denies relief on Wright's remaining claims.

---

[1] The Court of Appeals' Amended Opinion differs from the original in one respect. The original opinion dismissed the petition in its entirety. The Amended Opinion remanded the case for consideration of Wright's remaining claims.

**I.     Background**

Wright was convicted by a jury in Wayne County Circuit Court of first-degree murder and carrying a concealed weapon. He is serving a term of life imprisonment for the murder conviction and 2 to 5 years' imprisonment for the fiream conviction.

Wright's convictions arise from the shooting death of Travis Goodwin on December 29, 2007. Goodwin was shot while sitting in a parked van outside his mother's home on Kimberly Street in Detroit. Wright was convicted as an aider and abettor. It was the prosecution's theory that Wright drove the gunmen, Patrick Pickett ("Worm") and Shondell Dalton ("Black"), to the scene and, after the gunmen shot Goodwin, drove them away from the scene. Wright maintained that it was a case of mistaken identity.

The prosecution's key witness was Dawayne Currie. Currie testified that, at approximately 2:00 a.m. on the night of the shooting, he was playing video games with his daughter. He saw Goodwin pull up and park his mother's van. About 20 minutes later, Currie heard gunshots. After taking his daughter to a back room, he returned to look out the front window. Currie saw Black backing away from the van while firing an AK47 assault rifle. He also saw Worm getting into the passenger side of Wright's black Charger holding a handgun. Currie identified Wright as the driver of the Charger. Black and Worm wore ski masks, but Currie nevertheless identified them based upon Black's distinctive walk and Worm's body type. Wright was not wearing a ski mask and Currie was able to see Wright's face and braided hair.

Currie admitted that, a few weeks before the murder, Wright paid him $100 to

burn down Worm's drug house. Currie knew Wright was going to tell Worm that Goodwin had set the fire. After Wright's arrest, Currie's father and girlfriend conveyed to Currie an offer by Wright to pay Currie not to come to court.

Alice Smiley, Goodwin's mother, testified that she was awakened by gunshots during the early morning hours of December 29, 2007. Her neighbor, Dawayne Currie, knocked on her door to tell her that Goodwin had been shot. Goodwin was taken to the hospital and died on January 10, 2008, without ever regaining consciousness. Smiley then provided hearsay testimony, over defense counsel's objection, about Goodwin's reaction to the burning down of a drug house located on the adjacent street. Smiley testified that Goodwin told her that the destroyed house was Worm's and that Goodwin was concerned that "they gonna think I did it." *Wright*, 2010 WL 5373811 at *2.

Detroit police Officer Alfred G. Thomas also testified about Goodwin's out-of-court statements over defense counsel's objection. Less than one month before the shooting, Goodwin flagged down Thomas when Thomas was patrolling Goodwin's neighborhood. Goodwin told Thomas that he had received threats from Wright, Damien Bell, and Tommy Dickey, who were expanding the territory of their drug business.

Wright's habeas petition raised these claims:

I. The trial court violated due process by admitting the hearsay statements of the deceased victim to his mother and to Officer Thomas. Moreover, the trial court committed plain error by failing to give a limiting jury instruction on the use of the same.

II. The admission of out-of-court statements violated Petitioner's right to confrontation.

3

III. The trial court committed plain error in failing to instruct the jury that it should view Mr. Currie's testimony with caution as he was an accomplice to the crime.

IV. Prosecutorial misconduct denied Petitioner his right to a fair trial.

V. Petitioner was denied the effective assistance of counsel by his counsel's failure to object to the out-of-court statements on constitutional grounds, failure to request limiting instructions, failure to request accomplice instruction, and failure to object to the prosecutor's closing argument.

VI. The principal witness, Dawayne Currie, committed palpable perjury and therefore there is constitutionally insufficient evidence to support the verdict.

Wright's claims that his right to confrontation was violated when the trial court admitted Goodwin's statements to Officer Thomas and that defense counsel was ineffective in failing to object to this violation have been addressed on the merits. On remand, the Court addresses Wright's remaining claims.

## II. Standard

This habeas petition is reviewed under the exacting standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless the state adjudication of the claim either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted). To obtain relief under § 2254(d)(2), a petitioner must show an unreasonable

5

determination of fact *and* that the resulting state court decision was "based on" that unreasonable determination. *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2012).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## III. Discussion

### A. Due Process Claim

Wright's first claim concerns the admission of hearsay statements. Two witnesses, Alice Smiley (Goodwin's mother) and Officer Thomas, testified over defense objection about statements Goodwin made to them in the weeks before his murder. Wright argues that the cumulative effect of the improper admission of Goodwin's statements to both witnesses violated due process.

#### 1. Procedural Default

Respondent argues that this claim is procedurally defaulted because the Michigan Court of Appeals held that Wright's cursory treatment of the claim constituted abandonment of the issue. *Wright*, 2010 WL 5373811 at *1, n.1. The Michigan Court of Appeals held that, as a matter of state law, the trial court erred in admitting Goodwin's out-of-court statements. *Id.* at *3. The state court held that the error did not require reversal because it did "not appear more probable than not that the error affected the outcome of the trial." *Id.* The Michigan Court of Appeals specifically declined to

address the merits of Wright's due process claim because he provided "no analysis ... to support his assertion that the trial court's error under the rules of evidence deprived him of due process." *Id.* at *1, n.1. The state court's conclusion that Wright abandoned this claim seems at odds with his substantial brief on appeal. Nevertheless, the Court need not address the procedural default argument because, being bound by the Sixth Circuit's prior determination as to the strength of the evidence against Wright and the impact of Thomas's hearsay testimony, the Court concludes that the Due Process Claim fails on the merits.

### 2. Hearsay Testimony

The hearsay statements at issue were made by the victim, Goodwin. The Michigan Court of Appeals set forth the relevant testimony as follows:

> In this case, the prosecution called Goodwin's mother and officer Thomas to testify about statements that he had made prior to his death. Smiley testified that her son believed that he would be blamed for the arson of a nearby drug house:
>
> > Q. And what happens, and when does that fire occur, and then when does your son say something to you?
> >
> > A. The fire occurred like early morning one day. I can't remember the exact date. But then that next following day when I saw my son and I asked him, did any—you know, was there a fire over there? What happened? Who house burned up? He explained to me that it was Patrick's [Worm's] house.[ ] And then he informed me that, I know they gonna think I did it.
> >
> > Q. After your son said that, that they're going to blame me for it, how long after that was your son shot?

A. Oh, maybe a couple of weeks later.

Officer Thomas testified that Goodwin told him that defendant had threatened him:

> Q. Can you give me a sense of how soon before December 29th, '07 this conversation took place?
>
> A. At least ... three weeks to a month of patrolling the area of Mackinaw and Clarendon I encountered him, talked with him, and he expressed to me about some threats that he was receiving from three individuals in the neighborhood.
>
> Q. And when you say – did he identify who those threats, or who that fear came from?
>
> A. Yes.
>
> * * *
>
> Q. Who?
>
> A. One was the gentleman that's sitting in front of defense counsel, Mr. Nigel Wright, Nigel Kinte Wright. Another gentleman's name was Damien Bell, a black male that lives in the area of Quincy, and another individual was Tommy Dickey, which is another black male that lives in that same area of Mackinaw.
>
> Q. Who sought out who? Did you go up to ... Goodwin and say, hey, is anybody threatening you, or did he initiate that conversation knowing you were the police?
>
> A. In my course of patrol I observed him raise his hand up. I stopped and asked him what was going on with him; and he indicated he's not, you know, getting into anything; he's trying to start a family, and staying close to the home. And he says, it's those other guys that you need to look at that's in this neighborhood. I said, what other guys, and that's when he named the names.
>
> Q. And did he – as part of that did he express fear from these

> people as to something happening to him?
>
> A. Yes.
>
> ... [Officer Thomas] also testified that Goodwin had told him that the named individuals were expanding their drug territory.

*Wright*, 2010 WL 5373811 at *2.

### 3. Merits

Respondent asserts that the Sixth Circuit "implicitly" decided the question raised here – whether the combined effect of Goodwin's statements to Smiley and Thomas prejudiced Wright. *See* Resp't's Answer at 24 (ECF No. 39, PageID.2385). The Court of Appeals (and this Court) addressed only the admission of Thomas's testimony and held that admission of the testimony violated the Confrontation Clause. The Court of Appeals held that the error was harmless. This Court is bound by the Sixth Circuit's harmless error determination and may not reconsider the harmlessness of Thomas's testimony. *See Keith v. Bobby*, 618 F.3d 594, 599 (6th Cir. 2010) ("The law-of-the-case doctrine ... renders a determination by the court of appeals binding upon the district court in subsequent stages of the same litigation."). The Court of Appeals, however, did not address whether admission of Goodwin's statements to Smiley, considered in conjunction with his statements to Thomas, violated the Due Process Clause. For that reason, this Court may decide whether the combined impact of these statements rendered Wright's trial so fundamentally unfair as to violate Due Process.

Habeas relief is seldom available for a state court's erroneous evidentiary ruling

9

because habeas relief "does not lie for errors of state law." *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991). An evidentiary ruling may violate the Due Process Clause (and thereby provide a basis for habeas relief) where the ruling "is so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (2003). The Supreme Court "defined the category of infractions that violate fundamental fairness very narrowly." *Estelle*, 502 U.S. at 73 (1991). To violate due process, an evidentiary decision must "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (citation omitted).

The Sixth Circuit Court of Appeals addressed the strength of the prosecution's case in its discussion of *Strickland*'s prejudice prong and harmless error. The Court of Appeals determined that substantial properly admitted evidence connected Wright with the murder, beginning with Currie's testimony. The Court recognized that Currie's testimony contained inconsistencies and that, at trial, he admitted lying under oath at the preliminary examination when he denied any knowledge of conflict between Wright and Goodwin. *Wright*, 665 F. App'x at 405. But these inconsistencies, the Sixth Circuit held, were significantly counterbalanced by Currie's identifications of the perpetrators which remained consistent throughout. *Id.* The Court also concluded the jury could have found

Wright's recorded jail phone calls implicated Wright in the murder.[2] *Id.* at 409. Similarly persuasive to the Court of Appeals was Currie's testimony that he burned the drug house knowing Goodwin would be blamed and that Currie's testimony was consistent with the firearm expert's testimony regarding the types of guns used. The Court of Appeals held that the state court's assessment of the evidence was not unreasonable. *Wright*, 665 F. App'x at 409.

With the Sixth Circuit's analysis in mind, the Court considers whether Smiley's testimony is sufficient to tip the balance in favor of finding a due process violation when Thomas's alone was harmless. The Court finds it is not. The extent of Smiley's improperly admitted testimony was limited: Goodwin told her that "they" were going to blame him for the drug house fire. This testimony, to an extent, reiterated testimony already properly before the jury. The acrimonious nature of Goodwin's relationship with Wright was introduced through Smiley's properly admitted testimony that Goodwin and Wright were "enemies or not so good friends." (ECF No. 9-9, PageID.712.) Similarly,

---

[2] The recorded jail phone calls, excerpts of which were played for the jury, included these statement by Wright: "even if I didn't do it," "he [Herm] was out there the night when Trav got shot ... I remember," and "they know I didn't do no shooting." *Id.* The prosecutor argued that all of these statements were incriminating. First, the prosecutor argued that an innocent person would say, "I didn't do it," rather than "even if I didn't do it." Second, Wright placed himself at the scene by commenting on who else was present, which, the prosecutor argued, he would not have known unless he was there as well. Third, the prosecutor maintained that the statement was incriminating by virtue of what Wright did not say, i.e., he didn't say "I wasn't even there," or "I'm innocent"; rather than simply stating that he was not the shooter. Finally, the recordings also included statements which supported Currie's testimony that Wright's father offered Currie money not to testify against Wright.

Currie's properly admitted testimony that Goodwin would be blamed for the arson fire was more extensive and incriminating that Smiley's improperly admitted testimony.

As held by the Sixth Circuit, the admission of Thomas's testimony about Goodwin's out-of-court statements, standing alone, was harmless error. Goodwin's statements to Thomas were far more significant than his statements to Smiley. Smiley's improperly admitted testimony, limited as it was, does not meaningfully impact the harmless error analysis. Wright fails to show that the combined errors of admitting Goodwin's statements to Thomas and Smiley were not harmless. The Court finds that these errors do not implicate "fundamental conceptions of justice" and, therefore, do not violate the Due Process Clause. *Dowling*, 493 U.S. at 352.

Wright also argues that defense counsel was ineffective for failing to request an instruction limiting the jury's use of Goodwin's statements to their proper purpose. The Michigan Court of Appeals held that even assuming that counsel's performance was deficient, Wright was not prejudiced by the absence of a limiting instruction. *Wright*, 2010 WL 5373811 at *5. Because the state court's harmless error holding was not an unreasonable application of Supreme Court precedent, Wright cannot satisfy *Strickland*'s prejudice prong. *See Bell v. Hurley*, 97 F. App'x 11, 17 (6th Cir. 2004) (finding *Strickland* prejudice prong would not be met where the court found any error to be harmless).

### B. Accomplice Instruction Claim

Wright's second claim concerns the trial court's failure to give an accomplice

instruction concerning Dawayne Currie and defense counsel's failure to request the instruction. Currie testified that, a few weeks prior to Goodwin's murder, Wright paid him a $100 to burn a drug house in the neighborhood that belonged to "Worm." Currie admitted that he did so knowing that Wright was going to blame Goodwin for the fire. Goodwin's involvement in the drug business had caused conflicts with Wright, Black and Worm. Wright argues that Currie's involvement in the arson was sufficient to warrant a cautionary instruction on the unreliability of accomplice testimony and that counsel performed deficiently in failing to request the instruction.

The Michigan Court of Appeals held that an accomplice instruction was not appropriate for these reasons:

> Currie never testified that he took part in Goodwin's murder. Thus, the instruction for an undisputed accomplice does not apply. *See* CJI2d 5.4. Further, there was no evidence that Currie actually took part in Goodwin's murder. *See* CJI2d 5.5. Defendant argues that Currie was "an accessory" or "played a major role" in "the precipitating event"—the burning of the drug house—but this is not the same as taking part in murder and carrying a concealed weapon, the crimes with which defendant was charged. The cautionary instruction provided under CJI2d 5.6 is to be given after CJI2d 5.4 or CJI2d 5.5, depending on the circumstances. If neither of those instructions is warranted, the instruction under CJI2d 5.6 is also not warranted. Under the circumstances, the trial court had no reason to instruct the jury under CJI2d 5.4, CJI2d 5.5, and CJI2d 5.6.

*Wright*, 2010 WL 5373811 at *4.

The Supreme Court has "repeatedly held that a state court's interpretation of state law ... binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). A federal habeas court may review a state court's decision regarding an

omitted jury instruction only insofar as the omitted instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The Sixth Circuit Court of Appeals considered and rejected a similar claim in *Young v. Tromley*, 435 F. App'x 499 (6th Cir. 2011). In *Young*, the Sixth Circuit held that the failure to give a specific accomplice instruction does not violate a defendant's right to a properly instructed jury where the totality of the general credibility instruction,"'both informs the jury regarding credibility and alerts the jury to what is properly considered when determining credibility.'" *Id.* at 504 (quoting *Goff v. Bagley*, 601 F.3d 445, 470 (6th Cir. 2010). The instructions regarding witness credibility in this case are nearly identical to those given in *Young*. The Court finds that the failure to provide an accomplice instruction did not deny Wright a fair trial.

Wright's also claims that defense counsel was ineffective in failing to request an accomplice instruction. To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The Michigan Court of Appeals held that counsel was not ineffective in failing to request an accomplice instruction because the instruction was not supported by the evidence. *Wright*, 2010 WL 5373811 at *5. Counsel, the state court held, was "'not required to advocate a meritless position.'" *Id.* (quoting *People v. Snider*, 239 Mich. App. 393, 425 (2000)). The decision of the Michigan Court of Appeals was not contrary

14

to or an unreasonable application of Supreme Court precedent.

### C. Prosecutorial Misconduct Claim

Wright's third claim for relief concerns the prosecutor's closing argument and the related claim that counsel was ineffective for failing to object. Respondent argues that the prosecutorial misconduct claim is procedurally defaulted. Procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *Trest v. Cain*, 522 U.S. 87, 89 (1997). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Court finds it is more efficient to proceed to the merits of these claims.

Wright argues that the prosecutor's arguments in closing concerning Goodwin's out-of-court statements amounted to misconduct because she repeatedly emphasized evidence presented in violation of the Confrontation Clause. The Michigan Court of Appeals held that the claim was not preserved for review and, alternatively, that, even assuming the prosecutor committed misconduct, Wright was not entitled to relief because the error was harmless. *Wright*, 2010 WL 5373811 at *4.

The controlling Supreme Court decision governing prosecutorial misconduct claims is *Darden v. Wainwright*, 477 U.S. 168 (1986). Under *Darden*, a prosecutor's improper comments violate a criminal defendant's constitutional rights if they "'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.*, at 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643

15

(1974)). To constitute a due process violation, the prosecutor's conduct must have been "so egregious so as to render the entire trial fundamentally unfair." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citations omitted).

"A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008). This is so regardless of whether the state court's ruling was correct. *Frazier v. Huffman*, 343 F.3d 780, 792 (6th Cir. 2003). Here, the prosecutor relied upon the trial court's evidentiary rulings in discussing and summarizing Officer Thomas's and Smiley's testimony. It was not improper for the prosecutor to do so.

Similarly, defense counsel's failure to object was not ineffective. The trial court had already allowed the testimony and counsel could not be expected to object to the prosecutor's summation of properly admitted evidence.

### D. Perjury/Sufficiency of the Evidence Claim

Finally, Wright argues that the prosecutor knowingly presented perjured testimony. He argues that Dawayne Currie "committed perjury every time he testified." (ECF No. 1, PageID.49.) Further, he argues that, because the testimony was "inherently untrustworthy," the evidence presented is insufficient to sustain Wright's convictions. (*Id.* at PageID.49-50.)

The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972) (citations and internal quotations omitted). This rule applies to

both the solicitation of false testimony and the knowing acquiescence in false testimony. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). In order to prove this claim, a defendant must show that (1) the evidence the prosecution presented was false; (2) the prosecution knew it was false; and (3) the false evidence was material. *United States v. Hawkins*, 969 F.2d 169, 175 (6th Cir. 1992).

The Michigan Court of Appeals applied the correct legal standard and concluded that the prosecutor did not knowingly present perjured testimony:

> At trial, Currie admitted on cross-examination that he was not telling the whole truth at the preliminary examination when he replied "no" to the question whether Goodwin "had any beef with [defendant] before he got killed." He then replied "yes" when defense counsel asked, "You committed perjury, correct?" Even assuming this establishes perjury on this point, there is no indication that the prosecution "knowingly" offered perjured testimony at defendant's trial. Moreover, defendant does not even mention this admission in his Standard 4 brief. The instances of "perjury" he alleges in his brief are inconsistencies in Currie's testimony. Inconsistencies are not the same as perjury, and even if defendant could establish that Currie's testimony was perjured, he has not established that the prosecutor "knowingly" used perjured testimony to obtain his convictions. Defendant has not established that a violation of due process occurred in this case.

*Wright*, 2010 WL 5373811 at *8.

A habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000). The only evidence that Wright offers to support his perjury claim is the fact that Currie's trial testimony was inconsistent with his preliminary

17

examination testimony and his prior statements to the police. He has not offered any conclusive evidence that the Currie's testimony at trial was false. The jury was made aware of Currie's prior inconsistent statements and chose to credit his trial testimony. Further, even assuming that Currie's trial testimony was false, Wright presents no evidence that the prosecutor *knowingly* presented false evidence. The Michigan Court of Appeals decision was not an unreasonable application of Supreme Court precedent.

Wright's related sufficiency of the evidence claim is also meritless. He argues that absent perjured Currie's testimony the evidence was insufficient to support the convictions. The problem with this analysis is that Wright has not shown that Currie's trial testimony was false and the question of Currie's credibility was properly left for the jury to decide. This claim is denied.

## IV. Certificate of Appealability

In order to appeal the Court's decision, Wright must obtain a certificate of appealability. To obtain a certificate of appealability, Wright must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Wright must show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

Jurists of reason could debate the Court's holding regarding Wright's due process claim. Therefore, the Court grants Wright a certificate of appealability as to that issue. The Court denies a certificate of appealability as to the remaining claims.

## V. Conclusion

For the reasons stated above, the Court DENIES the petition for a writ of habeas corpus. The Court GRANTS a certificate of appealability on Petitioner's due process claim and DENIES a certificate of appealability with respect to the remaining claims.

                                                  s/Arthur J. Tarnow
                                            ARTHUR J. TARNOW
                                            UNITED STATES DISTRICT JUDGE

Dated: January 13, 2020